greatest period of time that these credits will provide."

It was the duty of the insurer in this case to credit the amount of the surplus apportioned to the policy or the dividends declared on the policy loan due by the insured. That would have kept the policy in force to a date subsequent to the date on which the insured died.

Counsel for defendant have directed our attention to that part of the statutes declaring "that the proportion of the surplus accruing upon said policy shall be ascertained and distributed annually and not otherwise," and to the following provision in the policy:

"This policy will participate at the end of the first policy year, and annually thereafter, in the distribution of the surplus funds of the company."

This does not mean, as contended by them, that under no circumstances could the insured get the benefit of the apportioned surplus, this dividend, except at the end of the policy year. Normally the policy would participate in the surplus only at the end of the policy year. But under certain contingencies it would participate before the end of the year. For instance, it is provided that, "if this policy becomes a claim by death, the dividend for the current year will be paid in cash in addition to the sum insured." It would hardly be contended that, if the insured had died six months before the end of the policy year, the company would have postponed the payment of this dividend until the end of the policy year.

The lower court awarded plaintiff the full amount of the policy, less the amount of the insured's indebtedness for premium loans. That judgment is correct, and is accordingly affirmed, with all costs.

(134 So. 402)

**BROCK, State Bank Com'r, v. HARDTNER et al.**

No. 30663.

March 2, 1931.

Rehearing Denied April 27, 1931.

J. B. Nachman, of Alexandria, for appellant.

Peterman, Dear & Peterman, of Alexandria, for appellee Brock.

Hawthorn, Stafford & Pitts, of Alexandria, for appellees Hardtner and Murchison.

ROGERS, J.

This suit was brought by J. S. Brock, as state bank commissioner, liquidating the Bank of Pollock, for an accounting by Henry E. Hardtner and Henry D. Murchison, liquidators of the First National Bank of Pineville, of the funds derived from the sale and collection of the assets of the Pollock Motor Company, Inc. W. J. O'Pry, who was intrusted with the liquidation of the Pollock Motor Company, Inc., by the First National Bank of Pineville, was called in warranty by the defendants. O'Pry answered the call in warranty, filing what purported to be a full and complete accounting of his administration of the affairs of the Pollock Motor Company, Inc., disclosing that he had the sum of $560.-55 in his possession for distribution.

The court below rendered judgment in favor of the plaintiff and against the defendants Hardtner and Murchison, liquidators, ordering them to account for the sum of $3,598.67, and a like judgment in favor of defendants against their warrantor, O'Pry, subject to the payment of $150 for the services of the warrantor's attorney in connection with the warrantor's accounting. From this judgment the warrantor, O'Pry, appealed. The plaintiff, Brock, and the defendants, Hardtner and Murchison, have answered the appeal, praying for an increase in the amount of the judgment rendered against the warrantor by the district court.

The Pollock Motor Company, Inc., was owned by James A. Christian and his sons, Charles S. and J. N. Christian. The Christians were also connected with the Bank of Pollock and the Bank of Pineville. The Pollock Motor Company, Inc., as well as the Christians, became indebted in large amounts to both banks. In the early part of the year 1925, the banks attached the assets of the Pollock Motor Company, Inc., and the building in which that company was operating, which building was the property of the Christians individually. After the seizure, the physical assets of the Pollock Motor Company, Inc., such as automobiles, supplies, and fixtures, and the building owned by the Christians, were sold by consent to one H. B. Scott. The money arising from the sale of the building after the payment of a mortgage resting thereon, was divided between the two banks. The proceeds of the sale of the physical assets of the motor company were by agreement deposited as a trust fund in the Bank of Pineville. The notes and accounts due the Pollock Motor Company, Inc., were also placed in the custody of the Bank of Pineville, to the end that they might be collected from the respective makers and debtors and the proceeds thereof distributed in due course to the creditors of the motor company. The sale of the physical assets of the motor company realized $9,776.65. The company owed $13,000 to its various creditors, including both banks. On August 6, 1926, the Pineville Bank, through its attorney, distributed to the creditors 60 per cent. of their

claims, the amount distributed being $8,182.-62. This left a balance of $1,594.03.

The warrantor, W. J. O'Pry, was vice president of the Bank of Pineville and active in its affairs. He also operated an insurance and real estate agency, and was president and practically the owner of the Home Investment Company, which at that time dealt largely in chattel mortgage notes resting on automobiles. In view of the activity of O'Pry in the affairs of the bank and of the facilities offered by his organization for the collection of the notes and accounts due the Pollock Motor Company, Inc., the matter of such collection was turned over to him, with the understanding that the funds collected would be deposited in the Bank of Pineville for the purpose of distribution. The balance of $1,-594.03 out of the sale of the physical assets of the motor company was also placed in charge of O'Pry for distribution in due course of his administration of the funds. O'Pry's connection with the Bank of Pineville ceased in June, 1926, shortly before which he withdrew what remained of the trust fund in the bank.

The Bank of Pollock became insolvent in March, 1925, and the state bank commissioner took charge of its affairs for the purpose of liquidation. Subsequently the defendants, Henry E. Hardtner and H. D. Murchison, were appointed liquidators of the Bank of Pineville.

O'Pry was intrusted with the collection of the notes and accounts due the Pollock Motor Company, Inc., in the month of April, 1925. The only account of his administration of the trust was the one he submitted in response to the present suit, which was filed on March 6, 1929. According to this account, O'Pry received in payment of the notes and accounts placed in his charge a total of $5,990.46, which, together with the sum of $1,594, which was turned over to him from the sale of the physical assets of the Pollock Motor Company, Inc., made a total of $7,584.49 that went into his possession. Against this debit, O'Pry credited himself for costs and expenses of collection with the sum of $7,023.94, leaving a balance due and owing by him of $560.55 for distribution among the creditors of the motor company, which amount he deposited in the registry of the court.

Neither of the appellees complain of the correctness of the accounting made by appellant of the funds received by him. Their complaint is solely directed against certain of the items for which appellant claims he should be allowed credit.

Appellees concede that appellant is entitled to credit out of the amount of $7,584.49 received by him on the following items, viz.:

| | |
|---|---|
| Amount paid for labor claims, | $1,074.79 |
| Attorneys' fees paid Hawthorn & Stafford, | 500.00 |
| Amount paid H. T. Dulaney, for inventory, | 100.00 |
| Legal expenses and taxes, | 450.31 |
| Erroneous collection, | 72.50 |
| Total of items admittedly correct, | $2,197.60 |

But appellees vigorously dispute the following items for which appellant contends equally as vigorously that he is entitled to credit, viz.:

| | |
|---|---|
| Commissions to appellant O'Pry | $1,213.53 |
| Commissions to L. C. Johnson, | 2,320.82 |
| Commissions to J. B. Blackburn, | 461.17 |
| Cost of reconditioning used cars, | 601.40 |
| Miscellaneous expenses, | 229.42 |
| Total amount of disputed claims, | $4,826.34. |

The original agreement between the representatives of the Bank of Pineville and W. P. O'Pry stipulated that O'Pry was to receive a supervision fee of 15 per cent. of

the amount collected, plus his reasonable expenses.

Shortly after O'Pry entered upon the discharge of his duties in pursuance of this agreement, he employed L. C. Johnson to collect the notes and accounts, agreeing to allow him expenses and 35 per cent. commission on all amounts collected by him. O'Pry also employed J. B. Blackburn for three months at a compensation of approximately $150 per month to assist in locating debtors of the Pollock Motor Company, Inc., and in repossessing cars on which payments were past due. Although Johnson, admittedly, was to receive as compensation only 35 per cent. of the amount collected by him, O'Pry allowed him 35 per cent. on not only what he actually collected, but also on amounts collected by others or which were received through the mail.

The court below as the basis for its judgment allowed appellant the following credits, viz.:

| | |
|---|---|
| Amount paid for labor claims, | $1074.79 |
| Shirley & Haywood, collections erroneously credited, | 72.50 |
| Amount paid for legal expenses and taxes, | 450.31 |
| Amount paid to H. T. Dulaney, | 100.00 |
| Amount paid to Hawthorn & Stafford, | 500.00 |
| Amount disbursed for re-possessing, reconditioning and resale of cars, the amount received for such resales, | 783.35 |
| Amount of commissions of L. C. Johnson, 35% on the amount actually collected by him, namely, $1268.92, | 444.12 |
| Total costs and expenses allowed as a credit to appellant, | $3425.07. |

The court below failed to allow appellant any commission for his supervisory services, and expressly disproved all sums in excess of $783.55 which he claimed to have expended in repossessing cars and all commissions claimed for L. C. Johnson in excess of $444.12.

Appellant complains of the action of the court below in failing to allow him credit for all the items claimed by him. Appellees complain of the action of the court in allowing appellant credit for $783.55 for repossessing, reconditioning, and reselling cars and for any commission whatever for account of L. C. Johnson. Appellees also complain of the award by the judge of $150 for attorney's fees incurred by the appellant in the preparation of his account.

The account submitted by the appellant shows the exact amount received by him from the collections of the notes and accounts due the Pollock Motor Company, Inc. No question is made by appellees as to its correctness; hence we see no reason why appellant should not be awarded the stipulated commission of 15 per cent. of $5,990.46 which came into his possession, or, say, $898.56. But appellant is not entitled to credit for the commissions paid or due to L. C. Johnson and J. B. Blackburn. As shown by the record, appellant was intrusted with the collection of the notes and accounts of the Pollock Motor Company, Inc., because it was understood by all parties to the agreement that, by reason of his experience in dealing with automobile paper and the facilities afforded by his organization for handling such business, he would be able to collect the notes and accounts in question at a minimum of expense. It was with that idea in view that his compensation was fixed at 15 per cent. of the amount collected, plus his reasonable expenses. When appellant discovered, as he declares he did, that

the notes and accounts were not what he thought they were, he should have consulted the officers or liquidators of the Pineville Bank, and secured their consent to incur the extraordinary expenses for which he is now claiming credit. But he failed to do this. Neither the employment of Johnson nor of Blackburn was authorized by the accredited representatives of the Pineville Bank. Appellant actually received from the bank $1,594, the balance on hand from the sale of the physical assets of the Pollock Motor Company, Inc., of which sum he apparently expended $1,033.45 in addition to the entire amount he received from the collections of the notes and accounts in making such collections.

We do not find any error in the allowance by the court below of $783.35, for repossessing, reconditioning, and reselling cars, that being the amount realized from the sale of such cars. And we think the court properly disallowed all sums in excess of that amount which appellant claims he expended for repossessing, reconditioning, and reselling cars. To the extent of the amount realized from the sale of the cars, it does not appear that appellees suffered any injury by reason of appellant's conduct in this respect. However, the reverse is true, to the extent that the amount expended for the repossessing, reconditioning, and reselling the cars exceeded the amount actually realized from their sale. Nor do we find any error in the allowance by the court below of $150 as a fee for the attorney who assisted appellant in the preparation of his accounting. We think this charge was incidental to, and a reasonable expense of, appellant's employment.

It follows from what we have hereinabove said that appellant is entitled to the following credits, viz.:

| | |
|---|---:|
| Amount paid for labor claims, | $1,074.79 |
| Shirley & Haywood, collections erroneously credited, | 72.50 |
| Amount paid for legal expenses and taxes, | 450.31 |
| Amount paid to H. T. Dulaney, | 100.00 |
| Amount expended for repossessing, reconditioning and reselling cars, | 783.55 |
| Hawthorn & Stafford, attorneys' fees, | 500.00 |
| W. J. O'Pry, 15% commission on $5990.46, | 898.56 |
| Total amount of credit to be allowed W. J. O'Pry, appellant, | $3,879.40 |

The court below in its judgment allowed appellant credit for the money which he deposited in the registry of the court, namely, $560.55, ordering the clerk of court to pay said amount over to the defendant liquidators; and also directed the said liquidators to apply out of the amount of the judgment against them and the appellant, namely, $3,598.67, the sum of $150 as attorney's fees incurred or expended by appellant in making his accounting.

The amount deposited by appellant in court, $560.55, plus the amount for which we find appellant is entitled to credit, $3,879.40, makes a total credit allowance to appellant of $4,439.95. Deducting this amount from $7,584.49, which was the amount received by appellant from the sale of the physical assets of the Pollock Motor Company, Inc., and from the collections of the notes and accounts of said motor company, leaves the amount due and to be accounted for by appellant to the liquidators of the Pineville Bank the sum of $3,144.54. The judgment appealed from will have to be amended accordingly.

For reasons assigned, the judgment appealed from is amended by reducing the prin-

cipal amount of said judgment in favor of Henry L. Hardtner and Henry D. Murchison, liquidators, and against William J. O'Pry, warrantor, from $3,598.67 to $3,144.54; and, as thus amended, the said judgment is affirmed; costs of appeal to be paid by the said liquidators.